UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BARRY CHI LAP YAN, as Personal Representative of the Estate of SYLVIA HU YAN, ALLEN YAN, by his next friend and father BARRY CHI LAP YAN, and JAMIE YAN, ) ) ) ) ) ) | |
| Plaintiffs, ) | |
| ) | 1:03-CV-1980-SEB-JPG |
| vs. ) ) | |
| ILLINOIS FARMERS INSURANCE COMPANY, ) ) ) | |
| Defendant. ) | |

### ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT

On November 28, 1999, Sylvia Hu Yan, her niece and two children were on their way back to Indianapolis after a family holiday get-together. Sylvia was driving a 1996 Chevrolet Blazer, which belonged to her former husband, Barry Chi Lap Yan, on the King's Highway 401 in London, Ontario, Canada. She lost control of the Blazer when attempting to avoid another vehicle. As a result, the Blazer rolled over several times, ejecting and injuring her two children and ending Sylvia's life.

Mr. Yan had insurance coverage for the Blazer through a policy with the Defendant, Illinois Farmers Insurance Company ("Farmers"). The day after the accident, Farmers had the vehicle transported to nearby Impact Auto Auctions

for inspection and appraisal.  A local appraiser was hired and on February 14, 2000 Farmers received the appraiser's report indicating that, after examining the vehicle, he determined it was a total loss.  The following day, Farmers wrote to Mr. Yan to notify him that the vehicle was a total loss and to provide him with a copy of the appraiser's written report.

In addition to making a claim for the property damage, Mr. Yan sought uninsured motorist coverage under his policy, asserting that Ms. Yan had been cut off by another vehicle, which caused her to lose control of the Blazer.  However, after an investigation by Farmers, the uninsured motorist coverage claim was denied because Farmers could not verify that another driver was at fault in connection with the accident and no contact had been made by Ms. Yan with any other vehicle.

On January 10, 2001 in payment of the property damage claim, Farmers issued a check to Bank One for the amount of the lien the bank held on the Blazer.  Farmers then issued a second check to Mr. Yan on March 12, 2001 in the amount of $14,095.38 to cover the remainder of the amount due on his property damage claim.  Both Bank One and Mr. Yan released their interests in the vehicle when they received their respective payments.  Farmers then allowed Impact Auto Auctions to sell the Blazer on its behalf as salvage.  Farmers did not inform Mr. Yan that the vehicle was being sold as salvage.  At no time prior to the sale of the vehicle in May of 2001 did Mr. Yan, or anyone

else on his behalf, indicate to Farmers that litigation of any sort was being contemplated.

On November 15, 2001, Mr. Yan notified Farmers that, as administrator of Ms. Yan's estate and the father of Barry Yan, he intended to file a product liability lawsuit against the manufacturer of the Blazer and the manufacturer of the tires which were on the Blazer at the time of the accident.  According to Mr. Yan, the family believed the vehicle had been retained in storage in Canada.  General Motors, the vehicle manufacturer and a defendant in the product liability action, was able to locate the purchaser of the salvaged Blazer in the United Arab Emirates, whereupon Mr. Yan requested that Farmers obtain the return of the car by paying the purchaser's asking price of $23,000.  Farmers would not consent to repurchasing the salvaged vehicle.  Without that evidence, Mr. Yan was forced to dismiss his lawsuit against General Motors and the tire manufacturer.  Instead, he has brought this lawsuit on behalf of his son and Ms. Yan's estate as well as his daughter, who is no longer a minor, asserting  that Farmers breached its duty to keep or maintain evidence it should have known would be necessary in litigation arising out of the accident.

Plaintiffs and Farmers have filed their respective motions seeking summary judgment.  Whether or not Farmers had a duty to maintain the Blazer as evidence for potential litigation is the legal issue at the heart of both motions.  Plaintiffs maintain that under Indiana common law, an insurer is

required to preserve evidence in its possession if it knows or should have known that there was a likelihood of litigation and that there would be a need for the evidence in that litigation. Farmers responds that there is no such duty and that, at most, it would be required to safeguard potential evidence only if it had been made aware by a party to impending litigation of the need to do so.

### *Summary Judgment Standard*

Summary judgment is only to be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. To determine whether any genuine factual issue exists, the Court examines the pleadings and the proof as presented in depositions, answers to interrogatories, admissions, and affidavits made a part of the record. *First Bank & Trust v. Firstar Information Services, Corp.*, 276 F.3d 317 (7th Cir.2001). The Court also draws all reasonable inferences from undisputed facts in favor of the non-moving party and views the disputed evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). Though seldom granted in cases alleging a breach of duty, summary judgment is appropriate where the issue is one of law, such as whether or not a legal duty is owed. *Lockwood v. Bowman Const. Co.*, 101 F.3d 1231, 1234 (7th Cir. 1996).

*Analysis*

Indiana, as in most other jurisdictions, recognizes the intentional destruction, alteration, concealment or disposal of evidence as "spoliation." *Cahoon v. Cummings*, 734 N.E.2d 535, 545 (Ind. 2000). Whether Indiana recognizes a separate tort for spoliation has been the subject of very recent state and federal appellate decisions handed down subsequent to the filing of this case and these motions. Accordingly, we shall proceed with an examination of those cases and authorities in reaching our determination here.

In *Gribben v. Wal-Mart Stores, Inc.*, 824 N.E.2d 349 (Ind. 2005), the Indiana Supreme Court opined upon the following question of law, which had been certified to it by Magistrate Judge V. Sue Shields of our court:

> 1) Does Indiana law recognize a claim for "first-party" spoliation of evidence; that is, if an alleged tortfeasor negligently or intentionally destroys or discards evidence that is relevant to a tort action, does the plaintiff in the tort action have an additional cognizable claim against the tortfeasor for spoliation of evidence?

*Id.* at 350. The Supreme Court responded that intentional first-party spoliation may be used to establish an inference that the evidence was unfavorable to the party responsible for its unavailability, but a separate claim for damages as a result of such spoliation is not a common law action recognized in Indiana. *Id.* at 355. The court continued, saying that there may be other reasons for

allowing such a remedy in situations where a third-party is responsible for the loss of the evidence, but since that was not the issue certified to the court nor one upon which the justices wished to opine at the time, it went unanswered. *Id.*

The Court of Appeals for the Seventh Circuit decided a third-party spoliation claim under Indiana law less than a week prior to the release of the *Gribben* opinion. In *J.S. Sweet Co., Inc. v. Sika Chemical Corp.*, 400 F.3d 1028 (7th Cir. 2005), a contractor sued the supplier of an epoxy road sealer when it failed to keep photographs and a memo that were created as a part of a site visit by one of its representatives investigating an epoxy delamination problem on one of the contractor's bridge projects. The White County Bridge Commission refused to pay the contractor because of the delamination problems on the bridge. *Id.* at 1030. The contractor then sued for payment under the contract, and the bridge commission counterclaimed alleging faulty application of the epoxy on the part of the contractor. *Id.* Eventually the case went to trial and the contractor prevailed. *Id.* The contractor brought a second, subsequent suit against the architect claiming that the architect had defamed it and intentionally provided the bridge commission with inaccurate information regarding the contractor's work on the bridge. *Id.* at 1031.

During discovery in this second lawsuit the contractor learned that the supplier's representative had photographed the delamination problem and

written a memo regarding his visit to the site and review of the problem.  *Id.*  The contractor promptly sent a subpoena to the supplier seeking production of the memo and photographs, but the supplier responded that it no longer had either.  *Id.*  Though the contractor was able to obtain the testimony of the former company representative who had visited the site as well as obtain some photographs taken during the same time frame, its suit against the architect ultimately failed.  *Id.*

   The contractor then filed a third suit, this one against the supplier, alleging, among other things, that the failure to keep the photographs, the memo and notes of a corresponding internal analysis constituted spoilation of evidence.  *Id.*  According to the claims asserted by the contractor, if the photographs and memo had been kept, it would have been strong evidence that the bridge commission's counterclaim was unfounded and that the contractor could have avoided the substantial expenditures of time and money in successfully defending the claim.  *Id.* at 1032.  Judge Richard L. Young of our court granted summary judgment in favor of the supplier on the contractor's spoliation claim.  *Id.* at 1031.  His judgment was affirmed on appeal in an opinion in which the Seventh Circuit held that Indiana law would not characterize the relationship between the contractor, who was an approved applicator of the epoxy, with the supplier as one giving rise to a duty or special ongoing obligation on the part of the supplier that would constrain the

supplier from disposing of the photos and documents at issue there.  *Id.* at 1033.  Further, the court concluded that the supplier could not reasonably have foreseen that a summary memo and photos would be critical to the contractor's resolution of its other legal problems or that the contractor would have relied on the supplier, rather than pursuing its own site inspection efforts.  *Id.*

The most recent Indiana decision on spoliation was handed down by the Indiana Court of Appeals in *Glotzbach v. Froman,* 827 N.E.2d 105 (Ind. App. 2005).  Drew Froman was killed in a work-related explosion which involved an allegedly "explosion proof" electric pump.  *Id.* at 107.  When the explosion occurred, Froman was a contract employee working with and under the supervision of the owner of an environmental waste service company in pumping out a large holding tank.  *Id.*  Following the accident, the owner of the waste service company was requested by the owner of the site to remove his equipment and the debris from the explosion, including the electric pump involved in the explosion.  *Id.*  The Indiana Occupational Safety and Health Administration contacted the owner of the waste service company a few days later to inform him that he needed to retain the equipment and debris from the explosion for later examination.  *Id.*  However, before use could be made of the equipment and debris, the service company owner disposed of everything he had retained from the accident scene.  *Id.*

Froman's estate brought a wrongful death action against the unknown manufacturer of the electric pump, including in the litigation the environmental waste service company as defendant in a separate count of spoliation. *Id.* at 107-108. The company filed for summary judgment, but the motion was denied in an order that was certified for appeal. *Id.* at 108. In reviewing that decision, the Court of Appeals focused on the issue of whether a "duty" to preserve the evidence existed under Indiana law, stating:

> Negligent or intentional spoliation of evidence is actionable as a tort only if the party alleged to have lost or destroyed the evidence owed a duty to the person bringing the spoliation claim to have preserved it. Whether the defendant must conform his conduct to a certain standard for the plaintiff's benefit is a question of law for the court to decide. Courts will generally find a duty where reasonable persons would recognize and agree that it exists.
>
> To determine the existence of duty, we balance three factors: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns.

*Id.* at 109 (citations omitted).

After analyzing these three factors, the appellate court determined that: (1) there was a special relationship between the company and Froman, because he was its employee and further, the company had been instructed to preserve the evidence from the explosion; (2) the foreseeability of harm to its employee's estate from the loss of equipment in use at the time of a fatal explosion was

clear; and (3) public policy concerns weigh more heavily in favor of recognizing a duty in light of the fact that sanctions and remedies available through the trial rules, inferences and instructions, when first-party spoliation is the issue, are not available against a third-party spoliator.  *Id.* at 110-112.  Under the facts and circumstances presented, the Court of Appeals affirmed the trial court's denial of summary judgment.  *Id.* at 112.

What is clear in reviewing these recent decisions is, first, there is no separate tort for first-party spoliation in Indiana and, second, the viability of a claim for third-party spoliation is dependent upon whether a recognizable duty exists between the plaintiff and the alleged destroyer of the evidence.  In deciding the duty issue, the three factors Indiana courts have determined to be critical must be analyzed in light of the circumstances presented in the particular case.  Having conducted such an examination in the case at bar, we conclude that Farmers was under no duty to preserve the Blazer as possible evidence.

Between Farmers and Plaintiff, there is no employment relationship. Rather the relationship is that of an insured and his insurer.  That relationship, according to Indiana Supreme Court decisions, is fluid, depending on the factors in play at any given time.  *See Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 518 (Ind. 1993).  There are times when the relationship between the two is adversarial (a first-party claim), when it is a traditional

arms-length relationship (at initial purchase) and when it is fiduciary (insurer's investigation in defense of potential third-party claim against insured).  *Id.*  In recognition of this changing nature, a general duty of good faith has been imposed on the insurer that includes the obligation to refrain from: (1) unfounded claim denials, (2) delays in claim processing, (3) deceit or, (4) exercising any unfair advantage in connection with claim settlement.  *Id.* at 519.  Plaintiffs' claims here do not include a breach of this good-faith duty by Farmers.  Our research discloses no Indiana decisions imposing an additional duty on an insurer vis-s-vis its insured, beyond the broadly defined duty of good faith.

     Plaintiffs contend that the Indiana Court of Appeals recognized the existence of a duty  on the part of an insurer to maintain evidence in *Thompson ex rel Thompson v. Owensby*, 704 N.E.2d 134 (Ind. App. 1998).  However, even a cursory review of that case establishes that it is clearly distinguishable from the case at bar.  In *Thompson,* six-year-old Nicole Thompson was brutally attacked by a dog who had broken free from a restraining cable.  *Id.* at 135.  The dog owner's landlord's insurer took possession of the restraining cable, but inadvertently lost it before the insurer or anyone else could examine or test it.  *Id.*  The insurance company was sued by the parents of the injured child for negligence, claiming that the landlord's carrier had assumed a duty when it took control of the evidence.  *Id.* at 136.  The insurance company moved to

dismiss the lawsuit on the grounds that Indiana did not recognize spoliation as an independent tort.  *Id.*  The trial court granted dismissal, after which the Thompsons successfully appealed with the appellate court deciding that the insurer's knowledge of the likelihood of a third-party pursuing litigation warranted the imposition of a duty on the insurer to maintain evidence which it initially assumed control over and knew was important to the claim at hand. *Id.* at 137-138.

The difference between that case and the case at bar is that the case at bar does not involve a third-party attempt to hold another person's insurer liable for spoliation.  Our case involves the insurer and its principal insured, to whom a duty of good faith is already owed.  While Plaintiffs argue that Farmers should have known that the Blazer and its tires would be important evidence in any litigation that might arise from the accident, we are of the view that the facts surrounding the accident and its aftermath are not at all suggestive of a likelihood of litigation.  Recall that no other vehicle was involved in this accident.  Mr. Yan's son, who was a passenger in the Blazer at the time, testified that his mother was attempting to avoid hitting another vehicle when the Blazer began to fishtail and then rolled over ejecting him.  Mr. Yan thus hypothesized to the insurance company that Ms. Yan had been "cutoff" by another vehicle, on which theory he had sought uninsured motorist coverage.  However, under the insurance contract, such coverage is conditioned on

another vehicle making contact with the insured's vehicle. More importantly, eyewitnesses to the accident who were interviewed by Farmers indicated that no other vehicle was in the immediate vicinity of the Blazer when, while traveling at a high rate of speed, it began to swerve. That knowledge made the anticipation of litigation against the tire and vehicle manufacturers dubious at best.

More persuasive in distinguishing the case at bar from the *Thompson* decision is the fact of the opportunity Mr. Yan had to alert Farmers to the prospect of possible or intended litigation. While Farmers took charge of towing the vehicle and locating a place for it to be stored while the property damage claim was being investigated and processed, it did not own the vehicle and had no right to sell it for salvage or anything else until Mr. Yan released the title nearly a year-and-a- half after the accident after receiving full payment of his property damage claim. Mr. Yan's assertion that he believed Farmers was required to keep the vehicle in storage or notify him if they were going to do anything else, is in our judgment, unreasonable in light of the fact that he himself signed away his ownership interest in the vehicle, having made no arrangements for its disposition.

The relationship between Farmers and the Plaintiffs is limited to that of an insurer to its insured, that is to say, it gives rise to a duty of good faith - nothing more, nothing less. There is no evidence of a breach of that duty here.

Further, in terms of foreseeability of litigation between the insureds and the manufacturers of the tires and vehicle, Farmers is held to no higher standard than that which a reasonable insurer would ordinarily suspect, absent some mention by the insured of the possibility of a lawsuit, during the year and a half following the accident while the vehicle was still in storage at Impact Auto Auctions. Nothing of that sort was indicated by the insured during that time, and the insurance company was not obligated to intuit such intentions. Finally, the negative public policy implications that would flow from requiring an insurer, who has received free and clear title to a vehicle from its insured, following settlement of a property damage claim, to refrain from disposing of the vehicle until it has made sure that the former owner does not need it for litigation or other purposes are unduly onerous. We do not believe the current state of Indiana law on this point imposes that duty and we shall not create it here.

## *Conclusion*

Farmers had no duty to maintain the Blazer in the condition it was in following the accident, subsequent to settling the property damage claim with its owner, Mr. Yan, and receiving free and clear title to the vehicle and in the absence of any timely indication by plaintiffs that litigation would likely ensue regarding the vehicle. Consequently, Plaintiffs' Motion for Partial Summary

Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED.  Judgment in favor of the Defendant shall issue.

SO ORDERED this 2nd day of September 2005.

                                              _____
                                              SARAH EVANS BARKER, JUDGE
                                              United States District Court
                                              Southern District of Indiana

Copies to:

Bryce H. Bennett Jr.
RILEY BENNETT & EGLOFF LLP
bbennett@rbelaw.com

Craig Douglas Doyle
DOYLE & FRIEDMEYER, P.C.
cdoyle@doylelegal.com

Kurt V. Laker
DOYLE & FRIEDMEYER
klaker@doylelegal.com

Laura Kay Taylor
RILEY BENNETT & EGLOFF LLP
ltaylor@rbelaw.com